UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BEATRIZ BALL, LLC | CIVIL ACTION |
| VERSUS | NO. 18-10214-WBV-KWR |
| CARLOS BARBAGALLO, ET AL. | SECTION: D (4) |

FINDINGS OF FACT and CONCLUSIONS OF LAW

I.  **PROCEDURAL HISTORY**

This is a copyright and trademark infringement case concerning tableware products. On October 31, 2018, Fabulous Pewterware, LLC, which is now known as Beatriz Ball, LLC (hereafter, "Plaintiff"), filed a Complaint and Request for Preliminary and Permanent Injunction in this Court against Barbagallo Company, LLC d/b/a Pampa Bay and Carlos Barbagallo, asserting claims for: (1) copyright infringement under the Copyright Act, 17 U.S.C. § 101, *et seq.*; (2) unfair competition under § 43 of the Lanham Act, in the form of false designation or false advertising under 15 U.S.C. § 1125(a) and dilution under 15 U.S.C. § 1125(c); and (3) violation of Louisiana's Unfair Trade Practices and Consumer Protection Law ("LUTPA"), Louisiana R.S. 51:1401, *et seq.* (R. Doc. 1 at ¶¶ 39-52). Plaintiff alleges that Pampa Bay and Barbagallo have marketed several lines of products that copy the look and feel of Plaintiff's "Organic Pearl" designs of tableware and constitute unauthorized derivative works that infringe upon Plaintiff's registered copyrights under 17 U.S.C. §§ 101, 103. (*Id.* at ¶¶ 23-44).

Plaintiff also asserts that the actions of Pampa Bay and Barbagallo in knowingly copying Plaintiff's designs constitute unfair competition under § 43(a) of the Lanham Act, in the form of false designation of origin, false or misleading description of fact, and/or false or misleading representation of fact likely to cause confusion or mistake or to deceive as to the affiliation, connection, or association. (*Id.* at ¶¶ 45-46). Specifically, Plaintiff alleges that its products are made in Mexico and that Pampa Bay and Barbagallo have implied that their items are made in Argentina when they are actually manufactured in China, which constitutes a false or misleading representation of fact that can cause confusion or mistake as to the origin of Pampa Bay's products. (*Id.* at ¶ 47). Finally, Plaintiff asserts that Pampa Bay and Barbagallo's actions in knowingly copying Plaintiff's designs constitutes an unfair or deceptive method, act or practice in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. R.S. 51:1401, *et seq.* (*Id.* at ¶¶ 51-52).

Plaintiff asserts that it will suffer irreparable harm if Pampa Bay and Barbagallo are not enjoined from marketing, distributing and selling designs that infringe Plaintiff's registered copyrights and that are likely to cause confusion as to their origin. As such, Plaintiff seeks injunctive relief, prohibiting Pampa Bay and Barbagallo from infringing Plaintiff's copyrights and prohibiting Pampa Bay and Barbagallo from engaging in acts likely to cause confusion as to the source of origin of Pampa Bay's products. Plaintiff also seeks a declaration that the copyright infringements were willful under 17 U.S.C. § 504(c)(2), and further seeks damages from the infringements and any violations of the LUTPA. Finally, Plaintiff seeks an

Order requiring the impoundment and destruction of all infringing goods in the marketplace or under the control of Pampa Bay and/or Barbagallo, and of all plates, molds, matrices or other articles by which such copies may be reproduced, pursuant to 17 U.S.C. § 503(a).  (*Id*. at p. 18).  The Complaint also includes a request for attorney's fees and costs under 17 U.S.C. § 505, 22 U.S.C. § 1117(a), and La. R.S. 51:1409.  (*Id*. at pp. 17-18).

Shortly thereafter, on December 6, 2018, Plaintiff filed a First Amended Complaint and Request for Preliminary and Permanent Injunction ("First Amended Complaint"), naming James E. Martin and Associates, Inc., an authorized sales representative and authorized distributor of Pampa Bay, as an additional defendant. (R. Doc. 4 at ¶ 7).  On April 15, 2019, Plaintiff voluntarily dismissed Barbagallo and James E. Martin and Associates, Inc., and voluntarily dismissed without prejudice all of its claims for copyright infringement involving "Organic Pearl" copyright applications that were pending before the United States Copyright Office.  (R. Docs. 32 & 33).  Prior to that dismissal, however, on February 12, 2019, Plaintiff had sought leave to file a Second Amended Complaint against the three defendants (Carlos Barbagallo, James E. Martin and Associates, Inc., and Barbagallo Company, LLC d/b/a Pampa Bay) which motion was subsequently granted on May 13, 2019.  (R. Docs. 21 & 36).

Since Plaintiff moved for, and the Court granted, Plaintiff's motion to dismiss defendants Carlos Barbagallo and James E. Martin and  Associates,  Inc., the only remaining defendant in the lawsuit following the filing of the Second Amended

Complaint is Barbagallo Company LLC d/b/a Pampa Bay ("Pampa Bay"). Plaintiff asserts the following causes of action against Pampa Bay in the Second Amended Complaint: (1) copyright infringement under 17 U.S.C. § 106; (2) unfair competition under § 43 of the Lanham Act, in the form of false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A), false advertising in violation of 15 U.S.C. § 1125(a)(1)(B), and dilution in violation of 15 U.S.C. § 1125(c); and (3) violation of the Louisiana Unfair Trade Practices Act, La. R.S. 51:1401, *et seq.* (R. Doc. 37 at pp. 30-39). On November 27, 2019, the Court denied Pampa Bay's Motion for Partial Summary Judgment, seeking dismissal of Plaintiff's claims for unfair competition under § 43 of the Lanham Act, false advertising and dilution of Plaintiff's alleged trade dress, and alleged violations of the LUTPA. (R. Docs. 46 and 89).

This matter was tried before the Court without a jury on December 2-4, 2019. The Court has carefully considered the testimony of all of the witnesses and the exhibits entered into evidence during the trial, as well as the record in this matter. Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court enters the following Findings of Fact and Conclusions of Law. To the extent that any finding of fact may be construed as a conclusion of law, the Court hereby adopts it as such. To the extent that any conclusion of law may be construed as a finding of fact, the Court adopts it as such.

## II.    FINDINGS OF FACT

### A. *Findings of Fact as to Count 1, Copyright Infringement.*

1. Beatriz Ball, LLC's ("Plaintiff's) tableware products are made of metal and are hand-crafted using a sand-casting method by skilled artisans working in factories located in Mexico.  (R. Doc. 37 at ¶¶ 14-15; R. Docs. 48 & 52; Trial Testimony of Beatriz Ball, December 2, 2019).

2. Barbagallo Company LLC d/b/a Pampa Bay ("Pampa Bay") has been producing and selling its ceramic tableware products, which are made in China, since at least as early as 2016.

3. Plaintiff alleges the Pampa Bay has infringed upon four of its registered copyrighted designs (the "Registered Copyrights"), namely:

| 6127 | ORGANIC nova pearl oval tray (md) | REGISTERED | VA-1-638-637 | | 2006 |
|------|-----------------------------------|------------|--------------|--|------|
| 6792 | ORGANIC PEARL Kristi rect tray w/handles (lg) | REGISTERED | VA-1-928-830 | | 2014 |
| 6370 | Organic Pearl quad dip | REGISTERED | VA-1-714-656 | | 2010 |
| 6793 | ORGANIC PEARL sauce bowl | REGISTERED | VA-1-928-829 | | 2014 |

(R. Doc. 37-1 at p. 1).

4. The Copyright Registration Certificate for VA-1-638-637, ORGANIC nova pearl oval tray (Trial Exhibit 1), identifies the following relevant information:

"Author"                     "Beatriz Ball"
"Author Created" work        "sculpture/3 D artwork"
"work made for hire"         "No"
"Copyright Claimant"         "Beatriz Ball Collection"

5.  The Copyright Registration Certificate for VA-1-928-830, ORGANIC PEARL

Kristi rect. tray w/handles (Trial Exhibit 3), identifies the following relevant

information:

| | |
|---|---|
| "Author" | "Beatriz Ball Collection" |
| "Author Created" work | "sculpture" |
| "work made for hire" | "Yes" |
| "Copyright Claimant" | "Beatriz Ball Collection" |

6.  The Copyright Registration Certificate for VA-1-714-656, Organic pearl quad

dip (Trial Exhibit 4), identifies the following relevant information:

| | |
|---|---|
| "Author Created" work | "sculpture/3 D artwork" |
| "Author" | "Beatriz Ball Collection" |
| "work made for hire" | "No" |
| "Copyright Claimant" | "Beatriz Ball Collection" |

7.  The Copyright Registration Certificate for VA-1-928-829, ORGANIC PEARL

sauce bowl (Trial Exhibit 2), identifies the following relevant information:

| | |
|---|---|
| "Author" | "Beatriz Ball Collection" |
| "Author Created" work | "sculpture" |
| "work made for hire" | "Yes" |
| "Copyright Claimant" | "Beatriz Ball Collection" |

8.  Each of the registered copyrights referenced above were issued by the United

States Copyright Officer prior to the United States Supreme Court's ruling on

March 22, 2017 in *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S.Ct. 1002,

197 L.Ed.2d 354 (2017).  (R. Doc. 37-1 at p. 1).

9.  By letter dated July 12, 2017, the United States Copyright Office denied

Plaintiff's pending copyright applications and refused to register the other

alleged copyrights that form the basis of Plaintiff's copyright infringement

claims (the "Refused Copyrights"), finding that the submitted products were

"useful articles" under 17 U.S.C. § 101 and, therefore, were legally ineligible for copyright protection and registration. (Trial Exhibit 7; R. Doc. 37-1 at p. 14).

10. Those products which were refused copyrights and found to be useful items by the United States Copyright Office include the following:

> PEARL denisse oval bowl centerpiece
> SOHO spiral dip
> SOHO brooklyn long rect platter
> VENTO sasha pyrex casserole 9 x 13
> ORGANIC PEARL diana bowl (md)
> VENTO rebecca md bowl w/ handles
> PEDESTAL Soho oval tray (sm)
> SOHO arden tiled bowl (md)
> SOHO arden tiled bowl (sm)
> ORGANIC PEARL rect tray (md)
> PEDESTAL VENTO Alex bowl (md)
> G&G VENTO Petit Tray
> G&G PEARL Petit Tray
> SOHO oval bowl (xlg)
> SOHO round bowl (mini)
> SOHO jean bowl (md)
> SOHO mari spoon (mini)

(Trial Exhibit 7 at p. 2).

11. Plaintiff had applied for copyright registrations with the Copyright Office of all of the Refused Copyrights during the first quarter of 2017. (R. Doc. 37-1 at p. 14).

12. Circular 40, issued by the United States Copyright Office and entitled "Copyright Registration for Pictorial, Graphic and Sculptural Works,"

provides, in relevant part (Trial Exhibit 131):

>   Copyright protection for an original work of authorship does not extend to
>   - Ideas, concepts, discoveries, principles
>   - Familiar symbols or designs
>   - Mere variations of typographic ornamentation, lettering, or coloring
>
>   ****
>
>   Useful Articles
>   A "useful article" is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information.   Examples are clothing, furniture, machinery, dinnerware, and lighting fixtures.  An article that is normally part of a useful article may itself be a useful article – an ornamental wheel cover on a vehicle, for example.
>
>   Copyright does not protect the mechanical or utilitarian aspects of such works of craftmanship.  It may, however, protect any pictorial, graphic, or sculptural authorship that can be identified separately from the utilitarian aspects of an object.  Thus a useful article may have both copyrightable and uncopyrightable features.  For example, a carving on the back of a chair or a floral relief design on silver flatware could be protected by copyright, but the design of the chair or flatware itself could not.
>
>   ****
>
>   Copyright in a work that portrays a useful article extends only to the artistic expression of the author of the pictorial, graphic, or sculptural work.  It does not extend to the design of the article that is portrayed.  For example, a drawing or photograph of an automobile or a dress design may be copy-righted, but that does not give the artist or photographer the exclusive right to make automobiles or dresses of the same design.

13. On October 30, 2018, the day before the Complaint was filed in this case,

    Beatriz Ball, individually and on behalf of the Beatriz Ball Collection, executed

a Copyright Assignment (the "Assignment"), which provides the following:

> This Copyright Assignment ("Assignment") is dated and effective as of the 30th day of October 2018 by and between Beatriz Ball individually and on behalf of the Beatriz Ball Collection ("Assignor") and Fabulous Pewterware LLC ("Assignee"), a Louisiana limited liability company.
>
> For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties to this Agreement, intending to be legally bound, agree as follows:
>
> 1. Assignment. Assignor hereby irrevocably conveys, transfers, and assigns to Assignee, and Assignee hereby accepts, all of Assignor's right, title, and interest in and to any and all copyrights, whether registered or not and whether or not applications have been filed with the United States Copyright Office or any other governmental body. This assignment expressly includes any and all rights associated with those copyrights.
> 2. Succession and Assigns. This Assignment shall be binding upon and shall inure to the benefit of the parties and their respective successors, heirs, and assigns.

(Trial Exhibit 5).

14. The Assignment does not include language explicitly transferring causes of action for prior infringements from Beatriz Ball to Fabulous Pewterware, LLC. (*Id.*).

15. Although the Complaint and the Second Amended Complaint were filed by Fabulous Pewterware, LLC (R. Docs. 1, 37), the Court granted Fabulous Pewterware, LLC's motion to change party name on October 2, 2019, changing the name of the plaintiff in this case from "Fabulous Pewterware, LLC" to "Beatriz Ball, LLC." (R. Docs. 48, 52.).

**B.** *Findings of Fact as to Count 2, Unfair Competition under § 43 of the Lanham Act, including False Designation and Unfair Competition in violation of 15 U.S.C. § 1125 (a)(1)(A), False Advertising in violation of 15 U.S.C. § 1125 (a)(1)(B), and Dilution in violation of 15 U.S.C. § 1125 (c).*

1. Plaintiff claims its Organic Pearl trade dress as the basis for its Lanham Act claim.  (R. Doc. 87, pp. 5-6).

2. Specifically, Plaintiff identifies its protected "trade dress" in the "Organic Pearl" products as follows:

> Fabulous owns trademark rights to the "look and feel"—i.e., the trade dress—of the "Organic Pearl" collection (rights which will sometimes be referenced as "Organic Pearl trademarks").  The Organic Pearl trademark applies to tableware of hand-crafted and artisanal quality, such that each item in the collection will have individual variation because each is poured and polished by hand with each piece having undulating shape ornamented with rims of individually-formed clay bead, each intentionally having a slightly irregular shape and size accentuating their hand-made artisanal quality.

(R. Doc. 37 at p. 8, ¶ 24).

3.  Plaintiff's alleged trade dress of the Organic Pearl collection is unregistered.

**C.** *Findings of Fact as to Count 3, Violations of the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1401, et seq.*

1. Plaintiff's unfair trade practice claims are set forth in paragraph 152 of its Second Amended Complaint as follows:

> Pampa Bay, Barbagallo, and M&A's actions—in knowingly copying the look and feel of the Organic Pearl trade dress, in marketing, distributing, and selling entire lines of look-alike products, in suggesting "Argentine" roots for goods made in China, in suggesting that Pampa Bay's "Verona," "Salerno," "Golden Salerno," and "Monaco" product are the result of plaintiffs design work, in mislabeling (or failing to label) Pampa Bay products with their country of origin, and in copying the look

> and feel and marketing of the Beatriz Ball Collection—all constitute unfair or deceptive methods, acts, or practices in violation of the Louisiana Unfair Trade Practices in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), LSA R.S. 51§1401 *et seq* to the detriment of Fabulous.

(R. Doc. 37 at pp. 38-39, ¶ 152).

2. Plaintiff claims that Pampa Bay knowingly copied Plaintiff's alleged trade dress in violation of the LUTPA.

3. Plaintiff further claims that Pampa Bay has falsely advertised its products by suggesting they were made in Argentina, when they were made in China.

4. The Court finds that Plaintiff has failed to prove any violation of the Louisiana Unfair Trade Practices Act.

## III. <u>CONCLUSIONS OF LAW</u>

### A. Jurisdiction and Venue

The Court has original jurisdiction over Plaintiff's copyright claims (Count 1) and Lanham Act claims (Count 2) under 28 U.S.C. §§ 1331 and 1338. As such, the Court may exercise supplemental jurisdiction over Plaintiff's state law claims brought under the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA") (Count 3), pursuant to 28 U.S.C. § 1367.

### B. Conclusions of Law as to Count 1 – Copyright Infringement.

1. The Copyright Act, specifically 17 U.S.C. § 201, provides, in relevant part:

> (a) Initial Ownership.—Copyright in a work protected under this title vests initially in the author or authors of the work. The authors of a joint work are co-owners of copyright in the work.

(b) Works Made for Hire.—In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

(c) Contributions to Collective Works.—Copyright in each separate contribution to a collective work is distinct from copyright in the collective work as a whole, and vests initially in the author or the contribution. In the absence of an express transfer of the copyright or of any rights under it, the owner of copyright in the collective work is presumed to have acquired only the privilege of reproducing and distributing the contribution as part of that particular collective work, any revision of that collective work, and any later collective work in the same series.

(d) Transfer of Ownership.—
(1) The ownership of a copyright may be transferred in whole or in party by any means of conveyance or by operation of law, and may be bequeathed by will or pass as personal property by the applicable laws of intestate succession.

(2) Any of the exclusive rights comprised in a copy right, including any subdivision of any of the rights specified by section 106, may be transferred as provided by clause (1) and owned separately. The owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title.

2. To prevail on a copyright infringement claim, a plaintiff must show: (1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity. *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc*., 783 F.3d 527, 449 (5th Cir. 2015) (citation omitted).

3. The first element of a copyright infringement claim is "ownership of a valid copyright." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991).

4. "(A) mere assignment of a copyright does not of itself transfer to the assignee any cause of action for infringements that occurred prior to the assignment. Unless the assignment of copyright contains language explicitly transferring causes of action for prior infringements, the assignee cannot maintain a suit for infringements which happened before the effective date of the assignment." *Prather v. Neva Paperbacks,* 410 F.2d 698, 700 (5th Cir. 1969) (quoting *DeSilva Constr. Corp. v. Herrald*, 213 F. Supp. 184, 192 (M.D. Fla. 1962)).

5. "The words 'right, title and interest' in an assignment have been construed by the courts not to carry with it the right to sue for past trespass or infringement." *Prather*, 410 F.2d at 700 (quoting *Kriger v. MacFadden Publications, Inc*., 43 F. Supp. 170, 171-72 (S.D.N.Y. 1941)) (internal quotation marks omitted).

6. Beatriz Ball, LLC is not the author of any of the copyrighted works at issue in this case.  Beatriz Ball, individually, and Beatriz Ball Collection are the authors of the copyrighted works. (Trial Exhibits 1-4). Beatriz Ball Collection is listed as the copyright claimant of the four copyrighted works in the Certificates of Registration. (*Id.*).

7. On October 30, 2018, the day before the Complaint was filed in this case, Beatriz Ball, individually, and on behalf of the Beatriz Ball Collection,

executed the Assignment, assigning all of their "right, title and interest in and to any and all copyrights, whether registered or not and whether or not applications have been filed with the United States Copyright Office or any other governmental body" to Fabulous Pewterware, LLC.  (Trial Exhibit 5).

8. The Assignment does not include language explicitly transferring to Fabulous Pewterware, LLC causes of action for prior infringements of the copyrights held by Beatriz Ball, individually, or Beatriz Ball Collection.  *(Id.).*

9. As previously mentioned, Fabulous Pewterware, LLC changed its corporate name to Beatriz Ball, LLC in March 2019.  (R. Doc. 48).

10. Because the Assignment does not contain language explicitly transferring causes of action for prior infringements from Beatriz Ball, individually, and Beatriz Ball Collection to Fabulous Pewterware, LLC, which is now known as Beatriz Ball, LLC, the Court finds that Beatriz Ball, LLC lacks legal standing to assert any copyright infringement claims against Pampa Bay that existed prior to or as of October 30, 2018, the date of the Assignment.  *Prather*, 410 F.2d at 700*; Hacienda Records*, *L.P. v. Ramos*, 718 Fed.Appx. 223, 233 (5th Cir. 2018).

11. The alleged copyright infringements at the heart of this litigation occurred prior to October 30, 2018.  (Trial Testimony of Beatriz Ball, December 2, 2019).

12. Accordingly, Beatriz Ball, LLC lacks standing to assert its claims for copyright infringement of VA-1-638-637, ORGANIC nova pearl oval tray (Trial Exhibit 1), VA-1-928-830, ORGANIC PEARL Kristi rect. tray w/handles (Trial Exhibit

3), A-1-714-656, Organic pearl quad dip (Trial Exhibit 4), VA-1-928-829, ORGANIC PEARL sauce bowl (Trial Exhibit 2), which claims must be dismissed.

13. Because the Court finds that Plaintiff lacks standing, it need not determine whether there was any copyright violation.

**C. Conclusions of Law as to Count 2— Unfair Competition under § 43 of the Lanham Act, In the Form of False Designation of Origin in Violation of 15 U.S.C. § 1125(a)(1)(A), False Advertising in Violation of 15 U.S.C. § 1125(a)(1)(B), and Dilution in Violation of 15 U.S.C. § 1125(c).**

1. In its Second Amended Complaint, Plaintiff asserts three claims under § 43(a) of the Lanham Act, 15 U.S.C. § 1125. First, Plaintiff asserts a claim for unfair competition in the form of false designation of origin, false or misleading description of fact, and/or false or misleading representation of fact likely to cause confusion or mistake or deceive as to the affiliation, connection, or association of Pampa Bay's products, in violation of 15 U.S.C. § 1125(a)(1)(A). (R. Doc. 37 at pp. 32-35). Plaintiff then asserts a claim for false and deceptive advertising, in violation of 15 U.S.C. § 1125(a)(1)(B). (*Id.* at pp. 35-37). Plaintiff further asserts a claim for dilution, in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(c)(1) and (c)(2)(C). (*Id.* at pp. 37-38).

2. Section 43(a) of the Lanham Act creates a cause of action for trade dress infringement. *Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 700-01 (5th Cir. 1981).

3. Plaintiff asserts that its Organic Pearl trade dress is the basis for its Lanham Act claims of trade dress infringement against Pampa Bay.  (R. Doc. 87 at pp. 5-7, ¶¶ 3 & 8).

4. The Lanham Act, in § 43(a), gives a producer a cause of action for the use by any person of "any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods . . . ."  *Wal-Mart Stores, Inc. v. Samara Brothers*, 529 U.S. 205, 216, 120 S.Ct. 1339, 1342, 146 L.Ed.2d 182 (2000).

5. Trade dress "refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product."  *Laney Chiropractic and Sports Therapy, P.A. v. Nationwide Mutual Ins. Co.,* 866 F.3d 254, 261 (5th Cir. 2017) (quoting *Test Masters Educ. Servs., v. State Farm Lloyds,* 791 F.3d 561, 565 (5th Cir. 2015)) (internal quotation marks omitted).

6. "Trade dress protection extends only to incidental, arbitrary or ornamental product features which identify the source of the product."  *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 355 (5th Cir. 2002).  "Put another way, trade dress protects the distinctive look of the product, not the functional product itself."  *Laney Chiropractic and Sports Therapy, P.A.*, 866 F.3d at 261 (citing *Eppendorf-Netheler-Hinz GMBH*, 289 F.3d at 355).

7.  To prevail on its trade dress infringement claim, Plaintiff must prove: (1) that its trade dress qualifies for protection; and (2) that the trade dress has been infringed by demonstrating a likelihood of confusion in the minds of potential consumers. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 (5th Cir. 2010) (citations omitted); *TWTB, Inc. v. Rampick*, 152 F. Supp. 3d 549, 572 (E.D. La. 2016) (citing *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1117-18 (5th Cir. 1991)).

8.  To qualify for trade dress protection, the product must either be inherently distinctive, meaning its intrinsic nature serves to identify a particular source, or it must have developed a secondary meaning, which occurs when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010) (quoting *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210-11, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000)) (internal quotation marks omitted).

9.  The Court previously determined that Plaintiff's alleged trade dress of the Organic Pearl collection is unregistered. (*See,* Section II(B) at p. 10, ¶ 3, *supra*).

10. Plaintiff acknowledges that, "The plaintiff asserting unregistered 'trade dress' to product design (as in the case here) must always prove that the claimed trade dress has acquired 'secondary meaning.'" (R. Doc. 87 at p. 8, ¶ 13

(quoting *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 216, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000)).

11. In *Samara Brothers, Inc.,* the Supreme Court held that, "design, like color, is not inherently distinctive." 529 U.S. at 212, 120 S.Ct. at 1344.  The Supreme Court ultimately concluded that, "[I]n an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing by the plaintiff of secondary meaning."  529 U.S. at 216, 120 S.Ct. at 1346.

12. Thus, in order to prevail on its Lanham Act claims, Plaintiff must establish that its trade dress in the Organic Pearl collection acquired secondary meaning.  *Bd. of Supervisors of LA State University v. Smack Apparel Co.*, 438 F. Supp. 2d 653, 658 (E.D. La. 2006) (quoting *Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 118 (5th Cir. 1979)) (internal quotation marks omitted).

13. Secondary meaning is acquired when, "in the minds of the public, the primary significance of a product feature . . . is to identify the source of the product rather than the product itself." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850-51, n.11, 102 S. Ct. 2182, 2186-87, n.11, 72 L.Ed.2d 606 (1982) (citation omitted).

14. The burden of demonstrating secondary meaning "is substantial and requires a high degree of proof." *Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 567 (5th Cir. 2005) (citations omitted).

15. "Because the primary element of secondary meaning is a mental association in buyer[s'] minds between the alleged mark and a single source of the product, the determination whether a mark or dress has acquired secondary meaning is primarily an empirical inquiry." *Amazing Spaces, Inc. v. Metro Mini Storage,* 608 F.3d 225, 248 (5th Cir. 2010) (quoting *Sunbeam Prods., Inc. v. W. Bend Co.*, 123 F.3d 246, 253 (5th Cir. 1997)) (internal quotation marks omitted).

16. In the context of trade dress, the Fifth Circuit has articulated seven factors to consider in determining whether secondary meaning has been shown:

> (1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the trade dress.

*Amazing Spaces, Inc.,* 608 F.3d at 248 (quoting *Bd. of Supervisors for La. State Univ. Agric. and Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 476 (5th Cir. 2008)) (internal quotation marks omitted).

17. The seven factors set out above in combination may show that consumers consider a mark to be an indicator of source even if each factor alone would not prove secondary meaning. *Smack Apparel Co.*, 550 F.3d at 476 (citation omitted).

18. Regarding the first factor, length and manner of use of the mark or trade dress, Plaintiff has provided evidence through the testimony of Beatriz Ball that

Plaintiff has been creating the Organic Pearl collection since approximately 2004 or 2005. (*See,* Trial Testimony of Beatriz Ball, December 2, 2019).

19. Beatriz Ball further testified that the Organic Pearl collection was a "super popular collection" that has been used on numerous products in her collection since that time. (*Id.*).

20. The Court finds the testimony of Ms. Ball credible, and admirable, regarding her recitation of her background and hands-on development of her business and products. Thus, the Court finds that the first factor, the length and manner of use of the trade dress, weighs in favor of finding Plaintiff's trade dress acquired secondary meaning. If the inquiry were to end here, the result might be different. However, the Court is required to apply existing law and consider the remaining factors espoused by the Fifth Circuit in order to determine whether secondary meaning has been proven.

21. Regarding the second factor, volume of sales, the only evidence introduced by Plaintiff was a half-page chart that purported to show the total sales of Plaintiff's products from 2009 through September 2019 (*i.e.,* prior to trial). (*See,* Trial Exhibit 61). While Plaintiff introduced evidence of its total volume of sales, it did not introduce any evidence regarding the volume of sales attributable to the Organic Pearl collection, which is the subject of the trade dress claims. As such, the Court finds that the second factor weighs against finding that Plaintiff's trade dress acquired secondary meaning.

22. Regarding the third factor, amount and manner of advertising, Plaintiff admits that it does not track advertising by collection.  (*See*, R. Doc. 55 at pp. 12-13).

23. While Plaintiff provided evidence that it spent an average of over half a million dollars in advertising each year for the past five years, that amount includes indirect expenses, including showroom rent, consultant fees, and marketing fees. (*Id.* at p. 13).

24. The evidence shows that in the past five years, Plaintiff's direct advertising costs ranged from a high of  $117,575 in 2018 to a low of $36,067 in 2015.  (*See,* Trial Exhibit 124).

25. Plaintiff also introduced evidence that the Organic Pearl collection features in every type of advertising conducted by Plaintiff, including websites, social media, and print advertisements in various forms.  (R. Doc. 55 at pp 12-13).

26. Although the advertisements introduced into evidence include photographs of pieces from the Organic Pearl collection, the Organic Pearl collection is not featured in every advertisement and is often featured in conjunction with pieces from other Beatriz Ball collections.  Almost all, if not all, of the advertisements specifically reference "Beatriz Ball."  (*See,* Trial Exhibits 110-114, 116, & 119-121).

27. While Plaintiff has shown a wide manner of advertising of the Organic Pearl collection, the first portion of this factor, it has not introduced any evidence regarding the amount spent on the Organic Pearl collection advertising, the

second portion of this factor.  Thus, the third factor is either neutral or weighs against  finding Plaintiff's trade dress acquired secondary meaning.

28. The fourth factor, the nature of use of the mark or trade dress in newspapers and magazines, also weighs against a finding of secondary meaning.  While many of Plaintiff's advertisements introduced into evidence showcase pieces from the Organic Pearl collection, very few of the advertisements reference the collection by name  and just as many  advertisements highlight Beatriz Ball pieces from other collections.  (*See,* Trial Exhibits 110-114, 116, & 119-121).

29. The Court finds that the evidence provided by Plaintiff establishes general advertising and marketing efforts to promote "Beatriz Ball" and to generally promote and  advertise  Plaintiff's  numerous  product  lines,  including  the Organic Pearl product line.  Plaintiff, however, offers no evidence of any advertising  directed  towards  the  promotion  of  its  alleged  trade  dress. Accordingly,  the  Court  finds  that  the  fourth  factor  weighs  against  finding Plaintiff's trade dress acquired secondary meaning.

30. Turning to the fifth factor, consumer survey evidence, Plaintiff has failed to provide any consumer survey evidence whatsoever.

31. The Fifth Circuit has "consistently expressed a preference for 'an objective survey of the public's perception of the mark at issue," and has recognized that, "The authorities are in agreement that survey evidence is the most direct and persuasive way of establishing secondary meaning."  *Amazing Spaces, Inc. v. Metro Mini Storage,* 608 F.3d 225, 248 (5th Cir. 2010) (quoting *Vision Ctr. v.*

*Opticks, Inc.*, 596 F.2d 111, 119 (5th Cir. 1980); *Sno-Wizard Mfg., Inc. v. Eisemann Prods. Co.*, 791 F.2d 423, 427 (5th Cir. 1986)) (internal quotation marks omitted).

32. Because Plaintiff has failed to provide any consumer survey evidence, the Court finds that the fifth factor weighs against finding Plaintiff's trade dress acquired secondary meaning.

33. Regarding the sixth factor, direct consumer testimony, Plaintiff has likewise failed to provide any direct consumer testimony to support a finding that its trade dress acquired secondary meaning. Plaintiff provided the testimony of Kelli Johns, the corporate sales director for Beatriz Ball, who testified that she had once confused Pampa Bay products for Beatriz Ball products while in Michigan assisting a sales representative. (*See,* Trial Testimony of Kelli Johns, December 3, 2019). Ms. Johns also testified that she once witnessed a customer walk into a store and pick up a Pampa Bay product to match the customer's existing pieces from the Beatriz Ball Organic Pearl collection. (*Id.*). While the Court found Ms. Johns' testimony credible, Ms. Johns further testified that the customer eventually purchased the Pampa Bay product even after being advised that it was not a Beatriz Ball Organic Pearl product. (*Id.*). The Court, therefore, does not find that this testimony supports a finding that Plaintiff's trade dress acquired secondary meaning.

34. Plaintiff also provided the testimony of Orlando Cancel, a sales representative for Beatriz Ball, who testified that corporate buyers have requested fulfillment

of Pampa Bay products from him as a Beatriz Ball representative because "they simply get confused." (*See,* Trial Testimony of Orlando Cancel, December 3, 2019).   Mr. Cancel further testified that, "There is a big difference in quality," as well as craftsmanship, between Beatriz Ball products and Pampa Bay products, which he testified is evident in "the materials, the color, the design aesthetic. There is a difference." (*Id.*).   The Court finds the testimony of Mr. Cancel credible, but not persuasive as to direct consumer testimony of confusion of the alleged trade dress.   In fact, the Court finds this testimony relevant to the seventh factor as well. Thus, the sixth factor weighs against finding Plaintiff's trade dress acquired secondary meaning.

35. As for the seventh factor, Pampa Bay's intent in copying the trade dress, Plaintiff has failed to provide any evidence of direct copying by Pampa Bay. Instead, Plaintiff admittedly relies on "the identical copying [which] could not have been the product of accident and defendant submitted no evidence of its independent development of any of the accused designs." (R. Doc. 87 at p. 10, ¶ 23).

36. The Court notes that the evidence introduced during the trial included tabletop pieces from several other manufacturers not named in the lawsuit, which incorporate the alleged trade dress and are very similar to both Beatriz Ball's Organic Pearl collection and Pampa Bay's products. (*See,* Trial Testimony of Beatriz Ball, December 2, 2019; Trial Testimony of Carlos Barbagallo, December 4, 2019; Trial Exhibits 91, 98-105).   The Court finds this evidence

demonstrates that within the tableware industry, there are numerous tableware products sold by various other manufacturers and/or retailers that include an "undulating shape" and "slightly irregular" beading similar to products sold by Pampa Pay and to the trade dress designs allegedly owned by Plaintiff.  (*See,* Trial Exhibits 91-105; R. Doc. 46-1 at pp. 2-3).   The Court further finds that this evidence shows widespread use of the alleged trade dress in the tabletop industry.   This evidence is relevant to factor seven because it refutes Plaintiff's claims that the similarity alone between Pampa Bay products and Beatriz Ball products supports a finding of direct copying.

37. Additionally, Plaintiff admits in its Second Amended Complaint that beaded trim is commonly used on tableware throughout the tableware industry, asserting that, "Beaded trim is common for tableware and in the decorative arts, but the Organic Pearl trademark is not common either for tableware or the decorative arts generally." (R. Doc. 37 at p. 8, ¶ 25).

38. Regarding the seventh factor, the Court also notes the testimony of Orlando Cancel, a sales representative for Beatriz Ball, who testified that, "There is a big difference in quality," as well as craftsmanship, between Beatriz Ball products and Pampa Bay products, which he testified is evident in "the materials, the color, the design aesthetic.   There is a difference." (Trial Testimony of Orlando Cancel, December 3, 2019).

39. The Court finds that the above evidence establishes that the seventh factor, Pampa Bay's intent in copying the trade dress, weighs against finding Plaintiff's trade dress acquired secondary meaning.

40. Based on the foregoing analysis, the Court finds that a majority of the factors set forth by the Fifth Circuit for determining whether secondary meaning has been shown weigh against finding that Plaintiff's trade dress acquired secondary meaning.  Thus, Plaintiff has failed to carry its substantial burden of proving by a "high degree of proof" that its trade dress acquired a secondary meaning. *Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 567 (5th Cir. 2005) (citations omitted).

41. As previously discussed, the Supreme Court has made clear that absent proof of secondary meaning, an unregistered trade dress in product design is not distinctive and, therefore, is not protectible under § 43(a) of the Lanham Act. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 216, 120 S.Ct. 1339, 1346, 146 L.Ed.2d 182 (2000); *Blue Bell Bio-Medical v. Cin-Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir. 1989).

42. Because Plaintiff's unregistered trade dress in the Organic Pearl collection has not acquired secondary meaning, it is not protectible under § 43(a) of the Lanham Act.  Accordingly, the Court need not determine whether Plaintiff's trade dress has been infringed under § 43(a) of the Lanham Act through false designation of origin, false advertising or dilution. *See, Samar Bros., Inc.*, 529 U.S. at 216, 120 S.Ct. at 1346; *Blue Bell Bio-Medical*, 864 F.2d at 1256.

43. The Court concludes that Plaintiff has failed to establish that Pampa Bay has violated § 43(a) of the Lanham.

### D. Conclusions of Law as to Count 3 – Violations of the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1401, *et seq.*

1. Plaintiff further asserts that Pampa Bay's actions violated the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. R.S. 51:1401, *et seq.* (R. Doc. 37 at ¶ 152). Plaintiff alleges the following:

> Pampa Bay, Barbagallo, and M&A's actions—in knowingly copying the look and feel of the Organic Pearl trade dress, in marketing, distributing, and selling entire lines of look-alike products, in suggesting "Argentine" roots for goods made in China, in suggesting that Pampa Bay's "Verona," "Salerno," "Golden Salerno," and "Monaco" product are the result of plaintiffs design work, in mislabeling (or failing to label) Pampa Bay products with their country of origin, and in copying the look and feel and marketing of the Beatriz Ball Collection—all constitute unfair or deceptive methods, acts, or practices in violation of the Louisiana Unfair Trade Practices in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), LSA R.S. 51§1401 *et seq* to the detriment of Fabulous.

*(Id.*).

2. The elements of a cause action under the LUTPA are: (1) an unfair or deceptive trade practice declared unlawful; (2) that impacts a consumer, business competitor or other person to whom the statute grants a private right of action; (3) which has caused ascertainable loss. *Who Dat Yat LLC v. Who Dat? Inc.*, Civ. A. No. 10-1333, 2011 WL 39043, at *3 (E.D. La. Jan. 4, 2011).

3. "Further, federal courts have treated the requirements of the LUTPA as mirroring the Lanham Act, which avoids the federal courts having to apply two

different analyses to Lanham-Act [sic] and LUTPA claims." *Id*, Civ. A. No. 10-1333, 2011 WL 39043 at *3.

4. As previously discussed, § 43(a) of the Lanham Act addresses various forms of unfair competition and provides as follows:

> **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

5. The Supreme Court has clarified that 15 U.S.C. § 1125 (a) is "one of the few provisions that goes beyond trademark protection," providing "a remedy against a person who used in commerce either 'a false designation of origin, or any false description or representation' in connection with 'any goods or services.'" *Dastar Corp. v. Twentieth Century Fox Film Corp.,* 539 U.S. 23, 28-29, 123 S.Ct. 2041, 2045, 156 L.Ed.2d 18 (2003).

6. The Court has already found that Plaintiff did not bear its burden of proving that Pampa Bay intentionally and knowingly copied Plaintiff's Organic Pearl collection. (*See,* Section II(C) at pp. 24-25, ¶¶ 35-38, *supra*). For the same reasons, the Court finds that Plaintiff's allegation that Pampa Bay violated the LUTPA by knowingly copying the look and feel of Plaintiff's Organic Pearl Collection lacks merit.

7. Plaintiff further claims that Pampa Bay has falsely advertised its products by suggesting that its goods have "Argentine roots" when they were actually made in China. (R. Doc. 37 at ¶ 152).

8. The Fifth Circuit has interpreted Section 43 of the Lanham Act as providing "protection against a 'myriad of deceptive commercial practices,' including false advertising or promotion." *Seven–Up Co. v. Coca–Cola Co.,* 86 F.3d 1379, 1387 (5th Cir. 1996) (quoting *Resource Developers v. Statue of Liberty–Ellis Island Found.,* 926 F.2d 134, 139 (2d Cir. 1991)).

9. A prima facie case of false advertising under Section 43(a) of the Lanham Act requires the plaintiff to establish:

> (1) A false or misleading statement of fact about a product;
> (2) Such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers;
> (3) The deception is material, in that it is likely to influence the consumer's purchasing decision;
> (4) The product is in interstate commerce; and
> (5) The plaintiff has been or is likely to be injured as a result of the statement at issue.

*Pizza Hut, Inc. v. Papa John's Int'l., Inc.,* 227 F.3d 489 (5th Cir. 2000).

10. The failure to prove the existence of any element of the prima facie case is fatal to the plaintiff's claim. (*Id.*).

11. Here, Plaintiff alleges that Pampa Bay has falsely advertised its goods as unique designs, but which are the original designs of Beatriz Ball. (R. Doc. 37 at ¶¶ 134-135).

12. The Court has already found that Plaintiff has failed to prove intentional copying of its products by Pampa Bay. (*See,* Section II(C) at pp. 24-25, ¶¶ 35-38, *supra*).

13. Plaintiff further alleges that Pampa Bay "falsely implied that Pampa Bay products originate in Argentina (as Fabulous' items are in fact made in Mexico) while actually being manufactured in China." (R. Doc. 37 at ¶ 138). The issue before the Court is whether these representations constitute violations of the LUTPA.

14. "In order to obtain monetary damages or equitable relief in the form of an injunction for a false advertising claim, a plaintiff must demonstrate that the commercial advertisement or promotion is either literally false, or if not literally false, that it is likely to mislead and confuse consumers." *Southern Snow Mfg. Co. v. Snow Wizard Holdings, Inc.*, 829 F. Supp. 2d 437, 445 (E.D. La. 2011) (citing *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000)).

15. With respect to materiality, when the advertising claim is shown to be literally false, the plaintiff need not introduce evidence on the issue of the impact the

statements had on consumers.  *See, Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 62 (2d Cir. 1992); *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996).

16. "On the other hand, if the statements at issue are either ambiguous or true but misleading, the plaintiff must present evidence of actual deception." *Pizza Hut, Inc.*, 227 F.3d at 497 (citing *American Council of Certified Podiatric Physicians and Surgeons v. American Bd. Of Podiatric Surgery, Inc.,* 185 F.3d 606, 616 (6th Cir. 1999); *Johnson & Johnson v. Smithkline Beecham Corp.,* 960 F.2d 294, 297 (2d Cir. 1992).

17. In support of its LUTPA claim for false advertising, Plaintiff points to the fact that Pampa Bay had previously made the following representations on its "About Us" page on its website:

> Pampa Bay History
> Our company, Pampa Bay was created in the heart of the Pampas grain belt, in Argentina.  The Pampa region is peppered with Fine Lakes creating a spectacular landscape of different shades of green from the farms surrounded by the crystal blue water from the bay lake.
> There is a big window in the designer's studio, where you can enjoy the breath taking view, which is consider [sic] one of the most inspirational of the world.  Working on [sic] this environment our designers are constantly creating the most beautiful designs that this place could inspire.  We are offering irresistible unique designs, best quality crafted by the best skilled  artisan in the world.
> Our Argentinean charm was inherited from our Italian ancestors.  Strongly influence [sic] by the European culture, Buenos Aires, the capital, is frequently referred to as the "Paris of South America."  Each and every design we create reflects a part of our culture, which is elegant and unique.

(Trial Exhibit 84).

18. Pampa Bay does not sell directly to consumers from its website. (Trial Testimony of Carlos Barbagallo, December 4, 2019). Plaintiff has provided no evidence to dispute the testimony of Carlos Barbagallo regarding this issue.

19. It is uncontroverted that Pampa Bay developed its website in approximately 2008 and has not changed or modified the "About Us" page since its inception. (Trial Testimony of Carlos Barbagallo, December 4, 2019).

20. Carlos Barbagallo testified that he was born in Argentina and it was in Argentina that he began working in his father's factories. Mr. Barbagallo further testified that he moved to the United States in 2001, began his Pampa Bay business, and began importing products from Argentina. Sometime in or around 2013 he began importing his products from China. He further testified that his products are now marked as either originating in China or the People's Republic of China. (Trial Testimony of Carlos Barbagallo, December 4, 2019).

21. The Court finds that the statements on Pampa Bay's "About Us" page on its website are, at best, either ambiguous or misleading.

22. Because Pampa Bay's statements on its website are ambiguous or misleading, at best, Plaintiff must present evidence of actual deception to prevail on its LUTPA claim. *See, Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 497 (5th Cir. 2000) (citations omitted); *Who Dat Yat LLC v. Who Dat? Inc.*, Civ. A. No. 10-1333, 2011 WL 39043, at *3 (E.D. La. Jan. 4, 2011).

23. Turning to the factors set forth by the Fifth Circuit to determine whether Plaintiff has presented a prima facie case of false advertising under § 43(a) of

the Lanham Act and, therefore, the LUTPA, the Court finds that Plaintiff has failed to present evidence to support its LUTPA claim. *Pizza Hut, Inc.*, 227 F.3d at 495; *Who Dat Yat LLC*, Civ. A. No. 10-1333, 2011 WL 39043 at *3.

24. Plaintiff has provided no evidence whatsoever regarding any deception, nor has Plaintiff provided any evidence that the information on Pampa Bay's "About Us" page was likely to mislead or confuse consumers.

25. Plaintiff has provided no evidence that any alleged false advertising by Pampa Bay influenced any consumer's purchasing decision.

26. Plaintiff has provided no evidence regarding whether any consumers were aware of Pampa Bay's website or its "About Us" page.

27. Finally, Plaintiff has failed to provide any evidence that it has been, or is likely to be, injured as a result of any alleged false advertising by Pampa Bay.

28. Based on the foregoing, the Court finds that Plaintiff has not established a prima facie case of false advertising under the LUTPA. *Pizza Hut, Inc.*, 227 F.3d at 495; *Who Dat Yat LLC*, Civ. A. No. 10-1333, 2011 WL 39043 at *3.

29. The Court further finds that even if Plaintiff had proved an unfair or deceptive trade practice regarding the country of origin of Pampa Bay products, Plaintiff has failed to establish any impact upon a consumer, business competitor or other person to whom the statute grants a private right of action or an ascertainable loss caused by any unfair or deceptive trade practice, as required under the LUTPA. *Who Dat Yat LLC v. Who Dat? Inc.*, Civ. A. No. 10-1333, 2011 WL 39043, at *3 (E.D. La. Jan. 4, 2011).

30. As such, the Court finds that Plaintiff has failed to prove that Pampa Bay has violated the LUTPA.

## IV.  **CONCLUSION**

The Court finds that plaintiff, Beatriz Ball, LLC, has failed to carry its burden of proving that Barbagallo Company LLC d/b/a Pampa Bay ("Pampa Bay") infringed Plaintiff's copyrights in certain designs in its Organic Pearl collection, that Pampa Bay violated § 43(a) of the Lanham Act through false designation of origin, false origin or dilution, or that Pampa Bay has violated the LUTPA.  Accordingly, the Court finds in favor of defendant, Barbagallo Company LLC d/b/a Pampa Bay, and against plaintiff, Beatriz Ball, LLC, as to Counts One, Two, and Three in the Second Amended Complaint.

Pampa Bay shall have **seven (7) days** from the date of this judgment to file a motion for attorney's fees.  Additionally, Pampa Bay shall then have **five (5) business days** from the date of the ruling on the motion for attorney's fees to provide the Court with a proposed Final Judgment that is commensurate with the Court's Findings of Fact and Conclusions of Law.  Pampa Bay shall send the proposed Final Judgment to the Court's email address, efile-Vitter@laed.uscourts.gov.

**IT IS SO ORDERED.**

New Orleans, Louisiana, November 25, 2020.

**WENDY B. VITTER**
**United States District Judge**